## SETTLEMENT AGREEMENT AND GENERAL RELEASE

The parties to this Settlement Agreement and General Release ("Agreement") are Fernando Coplin ("Claimant") and Joseph Cory Holdings, LLC ("Defendant") (collectively, the "Parties"). *F.C*

### Recitals

A.    Obed Vazquez was an independent contractor who performed work for Joseph Cory Holdings, LLC. He filed his First Amended Complaint on September 30, 2016 in the U.S. District Court for the Middle District of Florida as Case No. 6:16-cv-01307-PGB-TBS ("Amended Complaint"). The Amended Complaint alleged that Defendant violated the Fair Labor Standards Act ("FLSA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") by misclassifying him as an independent contractor and failing to properly pay him overtime wages for hours he worked in excess of forty hours a week. Vazquez also sued for unpaid wages under Florida common law and civil damages for fraudulent filing of information returns under 26 U.S.C. § 7434(a).

B.    Pedro Zayas, Pablito Santiago, Edwin Santiago, and Fernando Coplie are also independent contractors and filed declarations ("Declarations") advancing the same allegations Obed Vazquez asserted in the Amended Complaint.

C.    In this Agreement, "Claims" refers to all claims the Claimant has, holds, or owns against Defendant, whether known or unknown.

D.    Defendant denies the Claims made by the Claimant. Defendant believes the Claimant was properly classified as an independent contractor and that, therefore, the Claimant is not entitled to any damages for any of the Claims.

E.    By this Agreement, the Parties desire to settle, fully and finally, any and all of Claimant's Claims, including Claims under the FLSA, FDUPTA, Florida Common Law, and 26 U.S.C. § 7434(a) as set forth in the Amended Complaint.

### Agreement

In consideration of the recitals and the terms of this Agreement, the Parties agree as follows:

1.    **Settlement Amount**. As consideration for this Agreement, Defendant will pay Claimant the gross sum of $1,750.00 (the "Settlement Amount"). The Settlement Amount is being paid as compensation for all of Claimant's Claims as described in the Amended Complaint as well as for the general release by Claimant as described in this Agreement. The Settlement Amount will be paid as follows:

a.   Defendant will pay the gross amount of $1,750 to Fernando Coplie. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Fernando Coplie.

b.   Defendant will pay Wenzel Fenton Cabassa, P.A. ("Claimant's Counsel") reasonable attorney fees and costs in the gross amount of $3,000. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Wenzel Fenton Cabassa, P.A. Defendant agrees that this amount is reasonable and further agrees that it will jointly seek approval of such fees and costs and/or not oppose Claimant's application for recovery of this amount.

The consideration set forth above is in full and complete settlement of Claimant's Claims under the FLSA, FDUPTA, Florida Common Law, and 26 U.S.C. § 7434(a) as set forth in the Amended Complaint as well as the general release described in this Agreement. It represents a payment to which Claimant would not otherwise be entitled but for his entry into this Agreement. Claimant's Counsel will prepare, execute, and file a Request for Dismissal, voluntarily dismissing all claims asserted in the Amended Complaint without prejudice, within 15 days after the date this Agreement becomes effective. The payment for Form 1099 described in paragraph 1(a), above, shall be provided directly to Plaintiff's Counsel at 1110 N. Florida Ave. # 300, Tampa, FL 33602, within 30 days after the following conditions have been satisfied:

a.   The revocation period has passed (see paragraph 14, below) without revocation being exercised by the Claimant; and

b.   The Court has entered an order dismissing Case No. 6:16-cv-01307-PGB-TBS without prejudice.

   2.   **General Release by Claimant.** In consideration of the Settlement Amount described in Paragraph 1 of this Agreement, Claimant releases and discharges the Defendant from all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature, known or unknown, in law or equity. Without limiting the scope of this general release, Claimant understands that this general release applies to, but is not limited to:

a.   All claims involving the Defendant and its parent companies, subsidiaries, affiliates, and divisions, as well as each of their respective officers, directors, employees, shareholders, members, and agents, (collectively, the "Releasees").

b.   All claims contained in or covered by the original complaint or the Amended Complaint.

c.   All claims arising out of Claimant's business relationship with the Defendant and the termination of that business relationship.

d.   All claims arising from any alleged violation by the Releasees of any federal, state, or local statutes, or ordinances, including, but not limited to:

　　　i.     the FLSA;

　　　ii.    the Age Discrimination in Employment Act (the "ADEA");

　　　iii.   the Older Workers Benefit Protection Act (the "OWBPA");

　　　iv.    the Americans with Disabilities Act;

　　　v.     Title VII of the Civil Rights Act of 1964, as amended;

　　　vi.    42 U.S.C. § 1981, as amended;

　　　vii.   the Equal Pay Act;

　　　viii.  the Employee Retirement Income Security Act;

　　　ix.    the Consolidated Omnibus Budget Reconciliation Act;

　　　x.     the Rehabilitation Act of 1973;

　　　xi.    the Civil Rights Act of 1991;

　　　xii.   the Family and Medical Leave Act (the "FMLA");

　　　xiii.  Florida minimum wage and overtime laws;

　　　xiv.   Florida civil rights laws; and

　　　xv.    any other employment discrimination laws.

　　　xvi.   All claims based on constitutional, statutory, common law, or regulatory grounds, and any and all claims based on theories of workers' compensation retaliation, breach of contract or implied covenant, deprivation of equity interest, shareholder rights, conversion, defamation, retaliation, wrongful or constructive discharge, fraud, misrepresentation, promissory estoppel, or intentional and/or negligent infliction of emotional distress.

　　　xvii.  All claims for any relief, no matter how denominated, including, but not limited to, back pay, front pay, vacation

3

pay, holiday pay, bonuses, compensatory damages, punitive damages, damages for pain and suffering and attorney fees.

Claimant does not waive any claims based on events arising after the execution of this Agreement. This general release applies only to those claims that Claimant now has, owns, or holds, or which Claimant had, owned, or held, or claimed to own at any time before execution of this Agreement, against any or all of the Releasees. While this general release does not prohibit Claimant from filing charges of discrimination against the Releasees with any governmental agency, Claimant expressly waives his right to personally recover any money from the Releasees as a result of any discrimination filings.

3.  **Disclaimer of Liability.** Nothing in this Agreement shall constitute or should be construed as an admission of liability or wrongdoing by Defendant. Defendant expressly denies that it has done nothing wrong or unlawful. Defendant expressly asserts that Claimant was an independent contractor and not an employee.

4.  **Confidentiality.** Claimant (on behalf of himself and his immediate family) will keep confidential and will not disclose any of the terms or conditions of this Agreement, or the negotiations which resulted in this Agreement, except to legal counsel, accountants, and tax authorities, and as otherwise may be required by law or legal process or for the limited purpose of enforcement of this Agreement. Claimant further acknowledges that confidentiality is of the essence of this Agreement. If Claimant is asked about the facts or circumstances surrounding the Lawsuit, he is to respond that the case has been resolved, and that he is bound by confidentiality obligations not to speak about the specifics of this litigation. In the event that Claimant is subjected to formal legal process, court order, or lawful subpoena regarding the Lawsuit, his compliance will not be deemed a breach of this Section.

5.  ~~**Remedies for Breach.** The Parties agree that significant harm will~~ be caused if Claimant violates the Confidentiality provision of this Agreement, but that such damages will be difficult to specifically quantify. Consequently, liquidated damages in the amount of $1,000 per breach will be awarded to Defendant for any breach by Claimant of the Confidentiality Provision of this Agreement. Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the Settlement Amount to be paid by Defendant under this Agreement, the prevailing Party will be entitled to recover from the other its reasonable attorney fees incurred in the action, along with costs and damages.

6.  **Integration.** This written Agreement contains the entire agreement of the Parties regarding the settlement of Claimant's Claims as set forth in the Amended Complaint. This Agreement may not be changed orally but only by an

4

agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. Claimant acknowledges he has not relied upon any representations or promises except as set forth in this Agreement and has not relied upon Defendant or Defendant's counsel for any advice on or interpretation of the legal or tax implications of this Agreement. By signing below, the Parties acknowledge receipt of a copy of this Agreement. Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to review the Agreement and to advise each Party concerning how all of the terms and conditions of this Agreement may affect their future tax liabilities. The Parties have had the opportunity to retain their own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement. Further, the Parties' signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice. All Parties acknowledge their attorneys provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

7.   **Severability.** Should any clause of this Agreement be found void by a court of law, with the exception of the requirement that Defendant pay Claimant and his counsel the Settlement Amount set forth in Paragraph 1, that fact will not impair the remainder of this Agreement.

8.   **Governing Law.** This Agreement must be interpreted and enforced in accordance with the laws of the State of Florida. The Parties submit to jurisdiction before any state or federal court of record in Orlando, Florida, subject to the right, if any, of either Party to attempt to remove any claim arising under this Agreement to a United States District Court if that court has jurisdiction.

9.   **Construction of Agreement.** This Agreement is the result of negotiation and compromise. In interpreting this Agreement neither Party should be considered to be the drafter of the document and the language should not be strictly construed against either Party. Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

10.   **Binding Effect.** This Agreement is binding upon and inures to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, successors, and assigns.

11.   **Expenses.** The Parties must pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the Settlement Amount by Defendant to Claimant and his counsel referenced in Paragraph 1.

12.   **Counterparts**. This Agreement may be executed in identical counterparts, each of which will constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. PDF) and same will be treated as an original.

13.   **Understanding and Voluntariness**. CLAIMANT REPRESENTS AND AGREES THAT HE HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH HIS COUNSEL, HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

14.   **Time for Consideration and Revocation**. Claimant has had at least twenty-one days to consider this Agreement. Upon executing this Agreement, Claimant will have seven days following his execution of this Agreement in which he may revoke this Agreement. This Agreement will not be effective and enforceable until this revocation period has expired. Notice of the revocation of this Agreement must be in writing and delivered to Christopher Eckhart, Scopelitis, Garvin, Light, Hanson & Feary, 10 West Market Street, Suite 1400, Indianapolis, Indiana 46204 no later than 10:00 a.m. on the next business day following the expiration of the seven-day period.

**[SIGNATURES ON NEXT PAGE]**

**CONTRACTORS**

*Fernando Coplin*          ES Plicado Por Cynthia Gonzale
Fernando Coplin   F.C

Dated: *1-18-2017*

**DEFENDANT**

Joseph Cory Holdings, LLC

By: _____

Odeh Ahmad — Managing Partner.
Printed Name and Title

Dated: *3 2 17*

4827-1444-5887, v. 7

7

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

The parties to this Settlement Agreement and General Release ("Agreement") are Edwin Santiago, ("Claimant") and Joseph Cory Holdings, LLC ("Defendant") (collectively, the "Parties").

### Recitals

A.      Obed Vazquez was an independent contractor who performed work for Joseph Cory Holdings, LLC. He filed his First Amended Complaint on September 30, 2016 in the U.S. District Court for the Middle District of Florida as Case No. 6:16-cv-01307-PGB-TBS ("Amended Complaint"). The Amended Complaint alleged that Defendant violated the Fair Labor Standards Act ("FLSA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") by misclassifying him as an independent contractor and failing to properly pay him overtime wages for hours he worked in excess of forty hours a week. Vazquez also sued for unpaid wages under Florida common law and civil damages for fraudulent filing of information returns under 26 U.S.C. § 7434(a).

B.      Pedro Zayas, Pablito Santiago, Edwin Santiago, and Fernando Coplie are also independent contractors and filed declarations ("Declarations") advancing the same allegations Obed Vazquez asserted in the Amended Complaint.

C.      In this Agreement, "Claims" refers to all claims the Claimant has, holds, or owns against Defendant, whether known or unknown.

D.      Defendant denies the Claims made by the Claimant. Defendant believes the Claimant was properly classified as an independent contractor and that, therefore, the Claimant is not entitled to any damages for any of the Claims.

E.      By this Agreement, the Parties desire to settle, fully and finally, any and all of Claimant's Claims, including Claims under the FLSA, FDUPTA, Florida Common Law, and 26 U.S.C. § 7434(a) as set forth in the Amended Complaint.

### Agreement

In consideration of the recitals and the terms of this Agreement, the Parties agree as follows:

1.      **Settlement Amount.** As consideration for this Agreement, Defendant will pay Claimant the gross sum of $1,750.00 (the "Settlement Amount"). The Settlement Amount is being paid as compensation for all of Claimant's Claims as described in the Amended Complaint as well as for the general release by Claimant as described in this Agreement. The Settlement Amount will be paid as follows:

a.   Defendant will pay the gross amount of $1,750 to Edwin Santiago. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Edwin Santiago.

b.   Defendant will pay Wenzel Fenton Cabassa, P.A. ("Claimant's Counsel") reasonable attorney fees and costs in the gross amount of $3,000. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Wenzel Fenton Cabassa, P.A. Defendant agrees that this amount is reasonable and further agrees that it will jointly seek approval of such fees and costs and/or not oppose Claimant's application for recovery of this amount.

The consideration set forth above is in full and complete settlement of Claimant's Claims under the FLSA, FDUPTA, Florida Common Law, and 26 U.S.C. § 7434(a) as set forth in the Amended Complaint as well as the general release described in this Agreement. It represents a payment to which Claimant would not otherwise be entitled but for his entry into this Agreement. Claimant's Counsel will prepare, execute, and file a Request for Dismissal, voluntarily dismissing all claims asserted in the Amended Complaint without prejudice, within 15 days after the date this Agreement becomes effective. The payment for Form 1099 described in paragraph 1(a), above, shall be provided directly to Plaintiff's Counsel at 1110 N. Florida Ave. # 300, Tampa, FL 33602, within 30 days after the following conditions have been satisfied:

a.   The revocation period has passed (see paragraph 14, below) without revocation being exercised by the Claimant; and

b.   The Court has entered an order dismissing Case No. 6:16-cv-01307-PGB-TBS without prejudice.

**2.   General Release by Claimant.** In consideration of the Settlement Amount described in Paragraph 1 of this Agreement, Claimant releases and discharges the Defendant from all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature, known or unknown, in law or equity. Without limiting the scope of this general release, Claimant understands that this general release applies to, but is not limited to:

a.   All claims involving the Defendant and its parent companies, subsidiaries, affiliates, and divisions, as well as each of their respective officers, directors, employees, shareholders, members, and agents, (collectively, the "Releasees").

b.   All claims contained in or covered by the original complaint or the Amended Complaint.

2

c.   All claims arising out of Claimant's business relationship with the Defendant and the termination of that business relationship.

d.   All claims arising from any alleged violation by the Releasees of any federal, state, or local statutes, or ordinances, including, but not limited to:

   i.   the FLSA;

   ii.   the Age Discrimination in Employment Act (the "ADEA");

   iii.   the Older Workers Benefit Protection Act (the "OWBPA");

   iv.   the Americans with Disabilities Act;

   v.   Title VII of the Civil Rights Act of 1964, as amended;

   vi.   42 U.S.C. § 1981, as amended;

   vii.   the Equal Pay Act;

   viii.   the Employee Retirement Income Security Act;

   ix.   the Consolidated Omnibus Budget Reconciliation Act;

   x.   the Rehabilitation Act of 1973;

   xi.   the Civil Rights Act of 1991;

   xii.   the Family and Medical Leave Act (the "FMLA");

   xiii.   Florida minimum wage and overtime laws;

   xiv.   Florida civil rights laws; and

   xv.   any other employment discrimination laws.

   xvi.   All claims based on constitutional, statutory, common law, or regulatory grounds, and any and all claims based on theories of workers' compensation retaliation, breach of contract or implied covenant, deprivation of equity interest, shareholder rights, conversion, defamation, retaliation, wrongful or constructive discharge, fraud, misrepresentation, promissory estoppel, or intentional and/or negligent infliction of emotional distress.

   xvii.   All claims for any relief, no matter how denominated, including, but not limited to, back pay, front pay, vacation

pay, holiday pay, bonuses, compensatory damages, punitive damages, damages for pain and suffering and attorney fees.

Claimant does not waive any claims based on events arising after the execution of this Agreement. This general release applies only to those claims that Claimant now has, owns, or holds, or which Claimant had, owned, or held, or claimed to own at any time before execution of this Agreement, against any or all of the Releasees. While this general release does not prohibit Claimant from filing charges of discrimination against the Releasees with any governmental agency, Claimant expressly waives his right to personally recover any money from the Releasees as a result of any discrimination filings.

    **3.**    **Disclaimer of Liability.** Nothing in this Agreement shall constitute or should be construed as an admission of liability or wrongdoing by Defendant. Defendant expressly denies that it has done nothing wrong or unlawful. Defendant expressly asserts that Claimant was an independent contractor and not an employee.

    **4.**    **Confidentiality.** Claimant (on behalf of himself and his immediate family) will keep confidential and will not disclose any of the terms or conditions of this Agreement, or the negotiations which resulted in this Agreement, except to legal counsel, accountants, and tax authorities, and as otherwise may be required by law or legal process or for the limited purpose of enforcement of this Agreement. Claimant further acknowledges that confidentiality is of the essence of this Agreement. If Claimant is asked about the facts or circumstances surrounding the Lawsuit, he is to respond that the case has been resolved, and that he is bound by confidentiality obligations not to speak about the specifics of this litigation. In the event that Claimant is subjected to formal legal process, court order, or lawful subpoena regarding the Lawsuit, his compliance will not be deemed a breach of this Section.

    **5.**    **Remedies for Breach.** The Parties agree that significant harm will be caused if Claimant violates the Confidentiality provision of this Agreement, but that such damages will be difficult to specifically quantify. Consequently, liquidated damages in the amount of $1,000 per breach will be awarded to Defendant for any breach by Claimant of the Confidentiality Provision of this Agreement. Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the Settlement Amount to be paid by Defendant under this Agreement, the prevailing Party will be entitled to recover from the other its reasonable attorney fees incurred in the action, along with costs and damages.

    **6.**    **Integration.** This written Agreement contains the entire agreement of the Parties regarding the settlement of Claimant's Claims as set forth in the Amended Complaint. This Agreement may not be changed orally but only by an

4

agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. Claimant acknowledges he has not relied upon any representations or promises except as set forth in this Agreement and has not relied upon Defendant or Defendant's counsel for any advice on or interpretation of the legal or tax implications of this Agreement. By signing below, the Parties acknowledge receipt of a copy of this Agreement. Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to review the Agreement and to advise each Party concerning how all of the terms and conditions of this Agreement may affect their future tax liabilities. The Parties have had the opportunity to retain their own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement. Further, the Parties' signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice. All Parties acknowledge their attorneys provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

7.   **Severability**. Should any clause of this Agreement be found void by a court of law, with the exception of the requirement that Defendant pay Claimant and his counsel the Settlement Amount set forth in Paragraph 1, that fact will not impair the remainder of this Agreement.

8.   **Governing Law**. This Agreement must be interpreted and enforced in accordance with the laws of the State of Florida. The Parties submit to jurisdiction before any state or federal court of record in Orlando, Florida, subject to the right, if any, of either Party to attempt to remove any claim arising under this Agreement to a United States District Court if that court has jurisdiction.

9.   **Construction of Agreement**. This Agreement is the result of negotiation and compromise. In interpreting this Agreement neither Party should be considered to be the drafter of the document and the language should not be strictly construed against either Party. Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

10.   **Binding Effect**. This Agreement is binding upon and inures to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, successors, and assigns.

11.   **Expenses**. The Parties must pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the Settlement Amount by Defendant to Claimant and his counsel referenced in Paragraph 1.

12.     **Counterparts**. This Agreement may be executed in identical counterparts, each of which will constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. PDF) and same will be treated as an original.

13.     **Understanding and Voluntariness**. CLAIMANT REPRESENTS AND AGREES THAT HE HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH HIS COUNSEL, HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

14.     **Time for Consideration and Revocation**. Claimant has had at least twenty-one days to consider this Agreement. Upon executing this Agreement, Claimant will have seven days following his execution of this Agreement in which he may revoke this Agreement. This Agreement will not be effective and enforceable until this revocation period has expired. Notice of the revocation of this Agreement must be in writing and delivered to Christopher Eckhart, Scopelitis, Garvin, Light, Hanson & Feary, 10 West Market Street, Suite 1400, Indianapolis, Indiana 46204 no later than 10:00 a.m. on the next business day following the expiration of the seven-day period.

**[SIGNATURES ON NEXT PAGE]**

**CONTRACTORS**

Edwin Santiago

Dated: 2/17/17

**DEFENDANT**

Joseph Cory Holdings, LLC

By:

Odeh Ahmad - Managing Partner.

Printed Name and Title

Dated: 3/2/17

4822-2659-5647, v. 7

7

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

The parties to this Settlement Agreement and General Release ("Agreement") are Obed Vazquez, ("Claimant") and Joseph Cory Holdings, LLC ("Defendant") (collectively, the "Parties").

### Recitals

A.    Obed Vazquez was an independent contractor who performed work for Joseph Cory Holdings, LLC. He filed his First Amended Complaint on September 30, 2016 in the U.S. District Court for the Middle District of Florida as Case No. 6:16-cv-01307-PGB-TBS ("Amended Complaint"). The Amended Complaint alleged that Defendant violated the Fair Labor Standards Act ("FLSA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") by misclassifying him as an independent contractor and failing to properly pay him overtime wages for hours he worked in excess of forty hours a week. Vazquez also sued for unpaid wages under Florida common law and civil damages for fraudulent filing of information returns under 26 U.S.C. § 7434(a).

B.    Pedro Zayas, Pablito Santiago, Edwin Santiago, and Fernando Coplie are also independent contractors and filed declarations ("Declarations") advancing the same allegations Obed Vazquez asserted in the Amended Complaint.

C.    In this Agreement, "Claims" refers to all claims the Claimant has, holds, or owns against Defendant, whether known or unknown.

D.    Defendant denies the Claims made by the Claimant. Defendant believes the Claimant was properly classified as an independent contractor and that, therefore, the Claimant is not entitled to any damages for any of the Claims.

E.    By this Agreement, the Parties desire to settle, fully and finally, any and all of Claimant's Claims, including Claims under the FLSA, FDUPTA, Florida Common Law, and 26 U.S.C. § 7434(a) as set forth in the Amended Complaint.

### Agreement

In consideration of the recitals and the terms of this Agreement, the Parties agree as follows:

1.    **Settlement Amount.** As consideration for this Agreement, Defendant will pay Claimant the gross sum of $8,000.00 (the "Settlement Amount"). The Settlement Amount is being paid as compensation for all of Claimant's Claims as described in the Amended Complaint as well as for the general release by Claimant as described in this Agreement. The Settlement Amount will be paid as follows:

   a.    Defendant will pay the gross amount of $8,000 to Obed Vazquez. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Obed Vazquez.

   b.    Defendant will pay Wenzel Fenton Cabassa, P.A. ("Claimant's Counsel") reasonable attorney fees and costs in the gross amount of $3,000. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Wenzel Fenton Cabassa, P.A. Defendant agrees that this amount is reasonable and further agrees that it will jointly seek approval of such fees and costs and/or not oppose Claimant's application for recovery of this amount.

The consideration set forth above is in full and complete settlement of Claimant's Claims under the FLSA, FDUPTA, Florida Common Law, and 26 U.S.C. § 7434(a) as set forth in the Amended Complaint as well as the general release described in this Agreement. It represents a payment to which Claimant would not otherwise be entitled but for his entry into this Agreement. Claimant's Counsel will prepare, execute, and file a Request for Dismissal, voluntarily dismissing all claims asserted in the Amended Complaint without prejudice, within 15 days after the date this Agreement becomes effective. The payment for Form 1099 described in paragraph 1(a), above, shall be provided directly to Plaintiff's Counsel at 1110 N. Florida Ave. # 300, Tampa, FL 33602, within 30 days after the following conditions have been satisfied:

   a.    The revocation period has passed (see paragraph 14, below) without revocation being exercised by the Claimant; and

   b.    The Court has entered an order dismissing Case No. 6:16-cv-01307-PGB-TBS without prejudice.

   **2.**    **General Release by Claimant.** In consideration of the Settlement Amount described in Paragraph 1 of this Agreement, Claimant releases and discharges the Defendant from all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature, known or unknown, in law or equity. Without limiting the scope of this general release, Claimant understands that this general release applies to, but is not limited to:

   a.    All claims involving the Defendant and its parent companies, subsidiaries, affiliates, and divisions, as well as each of their respective officers, directors, employees, shareholders, members, and agents, (collectively, the "Releasees").

DocuSign Envelope ID: 2F3801A6-6549-40D9-8371-04FF3464BC33

b.      All claims contained in or covered by the original complaint or the Amended Complaint.

c.      All claims arising out of Claimant's business relationship with the Defendant and the termination of that business relationship.

d.      All claims arising from any alleged violation by the Releasees of any federal, state, or local statutes, or ordinances, including, but not limited to:

    i.      the FLSA;

    ii.      the Age Discrimination in Employment Act (the "ADEA");

    iii.      the Older Workers Benefit Protection Act (the "OWBPA");

    iv.      the Americans with Disabilities Act;

    v.      Title VII of the Civil Rights Act of 1964, as amended;

    vi.      42 U.S.C. § 1981, as amended;

    vii.      the Equal Pay Act;

    viii.      the Employee Retirement Income Security Act;

    ix.      the Consolidated Omnibus Budget Reconciliation Act;

    x.      the Rehabilitation Act of 1973;

    xi.      the Civil Rights Act of 1991;

    xii.      the Family and Medical Leave Act (the "FMLA");

    xiii.      Florida minimum wage and overtime laws;

    xiv.      Florida civil rights laws; and

    xv.      any other employment discrimination laws.

    xvi.      All claims based on constitutional, statutory, common law, or regulatory grounds, and any and all claims based on theories of workers' compensation retaliation, breach of contract or implied covenant, deprivation of equity interest, shareholder rights, conversion, defamation, retaliation, wrongful or constructive discharge, fraud, misrepresentation, promissory estoppel, or intentional and/or negligent infliction of emotional distress.

    xvii.  All claims for any relief, no matter how denominated, including, but not limited to, back pay, front pay, vacation pay, holiday pay, bonuses, compensatory damages, punitive damages, damages for pain and suffering and attorney fees.

Claimant does not waive any claims based on events arising after the execution of this Agreement. This general release applies only to those claims that Claimant now has, owns, or holds, or which Claimant had, owned, or held, or claimed to own at any time before execution of this Agreement, against any or all of the Releasees. While this general release does not prohibit Claimant from filing charges of discrimination against the Releasees with any governmental agency, Claimant expressly waives his right to personally recover any money from the Releasees as a result of any discrimination filings.

    **3.**    **Disclaimer of Liability.** Nothing in this Agreement shall constitute or should be construed as an admission of liability or wrongdoing by Defendant. Defendant expressly denies that it has done nothing wrong or unlawful. Defendant expressly asserts that Claimant was an independent contractor and not an employee.

    **4.**    **Confidentiality.** Claimant (on behalf of himself and his immediate family) will keep confidential and will not disclose any of the terms or conditions of this Agreement, or the negotiations which resulted in this Agreement, except to legal counsel, accountants, and tax authorities, and as otherwise may be required by law or legal process or for the limited purpose of enforcement of this Agreement. Claimant further acknowledges that confidentiality is of the essence of this Agreement. If Claimant is asked about the facts or circumstances surrounding the Lawsuit, he is to respond that the case has been resolved, and that he is bound by confidentiality obligations not to speak about the specifics of this litigation. In the event that Claimant is subjected to formal legal process, court order, or lawful subpoena regarding the Lawsuit, his compliance will not be deemed a breach of this Section.

    **5.**    **Remedies for Breach.** The Parties agree that significant harm will be caused if Claimant violates the Confidentiality provision of this Agreement, but that such damages will be difficult to specifically quantify. Consequently, liquidated damages in the amount of $1,000 per breach will be awarded to Defendant for any breach by Claimant of the Confidentiality Provision of this Agreement. Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the Settlement Amount to be paid by Defendant under this Agreement, the prevailing Party will be entitled to recover from the other its reasonable attorney fees incurred in the action, along with costs and damages.

    **6.**    **Integration.** This written Agreement contains the entire agreement of the Parties regarding the settlement of Claimant's Claims as set forth in the Amended Complaint. This Agreement may not be changed orally but only by an

4

agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. Claimant acknowledges he has not relied upon any representations or promises except as set forth in this Agreement and has not relied upon Defendant or Defendant's counsel for any advice on or interpretation of the legal or tax implications of this Agreement. By signing below, the Parties acknowledge receipt of a copy of this Agreement. Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to review the Agreement and to advise each Party concerning how all of the terms and conditions of this Agreement may affect their future tax liabilities. The Parties have had the opportunity to retain their own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement. Further, the Parties' signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice. All Parties acknowledge their attorneys provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

7. **Severability.** Should any clause of this Agreement be found void by a court of law, with the exception of the requirement that Defendant pay Claimant and his counsel the Settlement Amount set forth in Paragraph 1, that fact will not impair the remainder of this Agreement.

8. **Governing Law.** This Agreement must be interpreted and enforced in accordance with the laws of the State of Florida. The Parties submit to jurisdiction before any state or federal court of record in Orlando, Florida, subject to the right, if any, of either Party to attempt to remove any claim arising under this Agreement to a United States District Court if that court has jurisdiction.

9. **Construction of Agreement.** This Agreement is the result of negotiation and compromise. In interpreting this Agreement neither Party should be considered to be the drafter of the document and the language should not be strictly construed against either Party. Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

10. **Binding Effect.** This Agreement is binding upon and inures to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, successors, and assigns.

11. **Expenses.** The Parties must pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the Settlement Amount by Defendant to Claimant and his counsel referenced in Paragraph 1.

DocuSign Envelope ID: 2F3801A6-6549-40D9-8371-04FF3464BC33

12.     **Counterparts.** This Agreement may be executed in identical counterparts, each of which will constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. PDF) and same will be treated as an original.

13.     **Understanding and Voluntariness.** CLAIMANT REPRESENTS AND AGREES THAT HE HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH HIS COUNSEL, HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

14.     **Time for Consideration and Revocation.** Claimant has had at least twenty-one days to consider this Agreement. Upon executing this Agreement, Claimant will have seven days following his execution of this Agreement in which he may revoke this Agreement. This Agreement will not be effective and enforceable until this revocation period has expired. Notice of the revocation of this Agreement must be in writing and delivered to Christopher Eckhart, Scopelitis, Garvin, Light, Hanson & Feary, 10 West Market Street, Suite 1400, Indianapolis, Indiana 46204 no later than 10:00 a.m. on the next business day following the expiration of the seven-day period.

**[SIGNATURES ON NEXT PAGE]**

DocuSign Envelope ID: 2F3801A6-6549-40D9-8371-04FF3464BC33

**CONTRACTORS**

_Obed Vazquez_

FDD02D914CA84BC...

Obed Vazquez

Dated: 1/18/2017


**DEFENDANT**

Joseph Cory Holdings, LLC

By: _Odeh Ahmad - Managing Partner._

Printed Name and Title

Dated: 3/2/17


4817-6784-0062, v. 16

7

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

The parties to this Settlement Agreement and General Release ("Agreement") are Pablito Santiago, ("Claimant") and Joseph Cory Holdings, LLC ("Defendant") (collectively, the "Parties").

## Recitals

A.     Obed Vazquez was an independent contractor who performed work for Joseph Cory Holdings, LLC. He filed his First Amended Complaint on September 30, 2016 in the U.S. District Court for the Middle District of Florida as Case No. 6:16-cv-01307-PGB-TBS ("Amended Complaint"). The Amended Complaint alleged that Defendant violated the Fair Labor Standards Act ("FLSA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") by misclassifying him as an independent contractor and failing to properly pay him overtime wages for hours he worked in excess of forty hours a week. Vazquez also sued for unpaid wages under Florida common law and civil damages for fraudulent filing of information returns under 26 U.S.C. § 7434(a).

B.     Pedro Zayas, Pablito Santiago, Edwin Santiago, and Fernando Coplie are also independent contractors and filed declarations ("Declarations") advancing the same allegations Obed Vazquez asserted in the Amended Complaint.

C.     In this Agreement, "Claims" refers to all claims the Claimant has, holds, or owns against Defendant, whether known or unknown.

D.     Defendant denies the Claims made by the Claimant. Defendant believes the Claimant was properly classified as an independent contractor and that, therefore, the Claimant is not entitled to any damages for any of the Claims.

E.     By this Agreement, the Parties desire to settle, fully and finally, any and all of Claimant's Claims, including Claims under the FLSA, FDUPTA, Florida Common Law, and 26 U.S.C. § 7434(a) as set forth in the Amended Complaint.

## Agreement

In consideration of the recitals and the terms of this Agreement, the Parties agree as follows:

1.     **Settlement Amount.** As consideration for this Agreement, Defendant will pay Claimant the gross sum of $1,750.00 (the "Settlement Amount"). The Settlement Amount is being paid as compensation for all of Claimant's Claims as described in the Amended Complaint as well as for the general release by Claimant as described in this Agreement. The Settlement Amount will be paid as follows:

DocuSign Envelope ID: 76492ECC-2410-4D1E-B765-E581BA43F39D

a.   Defendant will pay the gross amount of $1,750 to Pablito Santiago. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Pablito Santiago.

b.   Defendant will pay Wenzel Fenton Cabassa, P.A. ("Claimant's Counsel") reasonable attorney fees and costs in the gross amount of $3,000. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Wenzel Fenton Cabassa, P.A. Defendant agrees that this amount is reasonable and further agrees that it will jointly seek approval of such fees and costs and/or not oppose Claimant's application for recovery of this amount.

The consideration set forth above is in full and complete settlement of Claimant's Claims under the FLSA, FDUPTA, Florida Common Law, and 26 U.S.C. § 7434(a) as set forth in the Amended Complaint as well as the general release described in this Agreement. It represents a payment to which Claimant would not otherwise be entitled but for his entry into this Agreement. Claimant's Counsel will prepare, execute, and file a Request for Dismissal, voluntarily dismissing all claims asserted in the Amended Complaint without prejudice, within 15 days after the date this Agreement becomes effective. The payment for Form 1099 described in paragraph 1(a), above, shall be provided directly to Plaintiff's Counsel at 1110 N. Florida Ave. # 300, Tampa, FL 33602, within 30 days after the following conditions have been satisfied:

a.   The revocation period has passed (see paragraph 14, below) without revocation being exercised by the Claimant; and

b.   The Court has entered an order dismissing Case No. 6:16-cv-01307-PGB-TBS without prejudice.

**2.   General Release by Claimant.** In consideration of the Settlement Amount described in Paragraph 1 of this Agreement, Claimant releases and discharges the Defendant from all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature, known or unknown, in law or equity. Without limiting the scope of this general release, Claimant understands that this general release applies to, but is not limited to:

a.   All claims involving the Defendant and its parent companies, subsidiaries, affiliates, and divisions, as well as each of their respective officers, directors, employees, shareholders, members, and agents, (collectively, the "Releasees").

b.   All claims contained in or covered by the original complaint or the Amended Complaint.

2

DocuSign Envelope ID: 76492ECC-2410-4D1E-B765-E561BA43F39D

c. All claims arising out of Claimant's business relationship with the Defendant and the termination of that business relationship.

d. All claims arising from any alleged violation by the Releasees of any federal, state, or local statutes, or ordinances, including, but not limited to:

    i. the FLSA;

    ii. the Age Discrimination in Employment Act (the "ADEA");

    iii. the Older Workers Benefit Protection Act (the "OWBPA");

    iv. the Americans with Disabilities Act;

    v. Title VII of the Civil Rights Act of 1964, as amended;

    vi. 42 U.S.C. § 1981, as amended;

    vii. the Equal Pay Act;

    viii. the Employee Retirement Income Security Act;

    ix. the Consolidated Omnibus Budget Reconciliation Act;

    x. the Rehabilitation Act of 1973;

    xi. the Civil Rights Act of 1991;

    xii. the Family and Medical Leave Act (the "FMLA");

    xiii. Florida minimum wage and overtime laws;

    xiv. Florida civil rights laws; and

    xv. any other employment discrimination laws.

    xvi. All claims based on constitutional, statutory, common law, or regulatory grounds, and any and all claims based on theories of workers' compensation retaliation, breach of contract or implied covenant, deprivation of equity interest, shareholder rights, conversion, defamation, retaliation, wrongful or constructive discharge, fraud, misrepresentation, promissory estoppel, or intentional and/or negligent infliction of emotional distress.

    xvii. All claims for any relief, no matter how denominated, including, but not limited to, back pay, front pay, vacation

> pay, holiday pay, bonuses, compensatory damages, punitive damages, damages for pain and suffering and attorney fees.

Claimant does not waive any claims based on events arising after the execution of this Agreement. This general release applies only to those claims that Claimant now has, owns, or holds, or which Claimant had, owned, or held, or claimed to own at any time before execution of this Agreement, against any or all of the Releasees. While this general release does not prohibit Claimant from filing charges of discrimination against the Releasees with any governmental agency, Claimant expressly waives his right to personally recover any money from the Releasees as a result of any discrimination filings.

    **3.**    **Disclaimer of Liability.** Nothing in this Agreement shall constitute or should be construed as an admission of liability or wrongdoing by Defendant. Defendant expressly denies that it has done nothing wrong or unlawful. Defendant expressly asserts that Claimant was an independent contractor and not an employee.

    **4.**    **Confidentiality.** Claimant (on behalf of himself and his immediate family) will keep confidential and will not disclose any of the terms or conditions of this Agreement, or the negotiations which resulted in this Agreement, except to legal counsel, accountants, and tax authorities, and as otherwise may be required by law or legal process or for the limited purpose of enforcement of this Agreement. Claimant further acknowledges that confidentiality is of the essence of this Agreement. If Claimant is asked about the facts or circumstances surrounding the Lawsuit, he is to respond that the case has been resolved, and that he is bound by confidentiality obligations not to speak about the specifics of this litigation. In the event that Claimant is subjected to formal legal process, court order, or lawful subpoena regarding the Lawsuit, his compliance will not be deemed a breach of this Section.

    **5.**    **Remedies for Breach.** The Parties agree that significant harm will be caused if Claimant violates the Confidentiality provision of this Agreement, but that such damages will be difficult to specifically quantify. Consequently, liquidated damages in the amount of $1,000 per breach will be awarded to Defendant for any breach by Claimant of the Confidentiality Provision of this Agreement. Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the Settlement Amount to be paid by Defendant under this Agreement, the prevailing Party will be entitled to recover from the other its reasonable attorney fees incurred in the action, along with costs and damages.

    **6.**    **Integration.** This written Agreement contains the entire agreement of the Parties regarding the settlement of Claimant's Claims as set forth in the Amended Complaint. This Agreement may not be changed orally but only by an

agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. Claimant acknowledges he has not relied upon any representations or promises except as set forth in this Agreement and has not relied upon Defendant or Defendant's counsel for any advice on or interpretation of the legal or tax implications of this Agreement. By signing below, the Parties acknowledge receipt of a copy of this Agreement. Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to review the Agreement and to advise each Party concerning how all of the terms and conditions of this Agreement may affect their future tax liabilities. The Parties have had the opportunity to retain their own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement. Further, the Parties' signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice. All Parties acknowledge their attorneys provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

7. **Severability.** Should any clause of this Agreement be found void by a court of law, with the exception of the requirement that Defendant pay Claimant and his counsel the Settlement Amount set forth in Paragraph 1, that fact will not impair the remainder of this Agreement.

8. **Governing Law.** This Agreement must be interpreted and enforced in accordance with the laws of the State of Florida. The Parties submit to jurisdiction before any state or federal court of record in Orlando, Florida, subject to the right, if any, of either Party to attempt to remove any claim arising under this Agreement to a United States District Court if that court has jurisdiction.

9. **Construction of Agreement.** This Agreement is the result of negotiation and compromise. In interpreting this Agreement neither Party should be considered to be the drafter of the document and the language should not be strictly construed against either Party. Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

10. **Binding Effect.** This Agreement is binding upon and inures to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, successors, and assigns.

11. **Expenses.** The Parties must pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the Settlement Amount by Defendant to Claimant and his counsel referenced in Paragraph 1.

DocuSign Envelope ID: 76492ECC-24104D1E-B765-E861BA43F369

12.   **Counterparts.** This Agreement may be executed in identical counterparts, each of which will constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. PDF) and same will be treated as an original.

13.   **Understanding and Voluntariness.** CLAIMANT REPRESENTS AND AGREES THAT HE HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH HIS COUNSEL, HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

14.   **Time for Consideration and Revocation.** Claimant has had at least twenty-one days to consider this Agreement. Upon executing this Agreement, Claimant will have seven days following his execution of this Agreement in which he may revoke this Agreement. This Agreement will not be effective and enforceable until this revocation period has expired. Notice of the revocation of this Agreement must be in writing and delivered to Christopher Eckhart, Scopelitis, Garvin, Light, Hanson & Feary, 10 West Market Street, Suite 1400, Indianapolis, Indiana 46204 no later than 10:00 a.m. on the next business day following the expiration of the seven-day period.

**[SIGNATURES ON NEXT PAGE]**

DocuSign Envelope ID: 76492ECC-2410-4D1E-B765-E561BA43F39D

## CONTRACTORS

DocuSign by:

_____

Pablito Santiago

Dated:_____1/18/2017_____


## DEFENDANT

Joseph Cory Holdings, LLC

By:_____

Oden Ahmad  Managing Partner

Printed Name and Title

Dated:____3/2/17_____


4811-8581-8431, v. 7

7

DocuSign Envelope ID: 31365416-478A-4495-9F5A-9EE753A1F1E7

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

The parties to this Settlement Agreement and General Release ("Agreement") are Pedro Zayas, ("Claimant") and Joseph Cory Holdings, LLC ("Defendant") (collectively, the "Parties").

### Recitals

A.     Obed Vazquez was an independent contractor who performed work for Joseph Cory Holdings, LLC. He filed his First Amended Complaint on September 30, 2016 in the U.S. District Court for the Middle District of Florida as Case No. 6:16-cv-01307-PGB-TBS ("Amended Complaint"). The Amended Complaint alleged that Defendant violated the Fair Labor Standards Act ("FLSA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") by misclassifying him as an independent contractor and failing to properly pay him overtime wages for hours he worked in excess of forty hours a week. Vazquez also sued for unpaid wages under Florida common law and civil damages for fraudulent filing of information returns under 26 U.S.C. § 7434(a).

B.     Pedro Zayas, Pablito Santiago, Edwin Santiago, and Fernando Coplie are also independent contractors and filed declarations ("Declarations") advancing the same allegations Obed Vazquez asserted in the Amended Complaint.

C.     In this Agreement, "Claims" refers to all claims the Claimant has, holds, or owns against Defendant, whether known or unknown.

D.     Defendant denies the Claims made by the Claimant. Defendant believes the Claimant was properly classified as an independent contractor and that, therefore, the Claimant is not entitled to any damages for any of the Claims.

E.     By this Agreement, the Parties desire to settle, fully and finally, any and all of Claimant's Claims, including Claims under the FLSA, FDUPTA, Florida Common Law, and 26 U.S.C. § 7434(a) as set forth in the Amended Complaint.

### Agreement

In consideration of the recitals and the terms of this Agreement, the Parties agree as follows:

1.     **Settlement Amount.** As consideration for this Agreement, Defendant will pay Claimant the gross sum of $1,750.00 (the "Settlement Amount"). The Settlement Amount is being paid as compensation for all of Claimant's Claims as described in the Amended Complaint as well as for the general release by Claimant as described in this Agreement. The Settlement Amount will be paid as follows:

a.  Defendant will pay the gross amount of $1,750 to Pedro Zayas. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Pedro Zayas.

b.  Defendant will pay Wenzel Fenton Cabassa, P.A. ("Claimant's Counsel") reasonable attorney fees and costs in the gross amount of $3,000. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Wenzel Fenton Cabassa, P.A. Defendant agrees that this amount is reasonable and further agrees that it will jointly seek approval of such fees and costs and/or not oppose Claimant's application for recovery of this amount.

The consideration set forth above is in full and complete settlement of Claimant's Claims under the FLSA, FDUPTA, Florida Common Law, and 26 U.S.C. § 7434(a) as set forth in the Amended Complaint as well as the general release described in this Agreement. It represents a payment to which Claimant would not otherwise be entitled but for his entry into this Agreement. Claimant's Counsel shall prepare, execute, and file a Request for Dismissal, voluntarily dismissing all claims asserted in the Amended Complaint without prejudice, within 15 days after the date this Agreement becomes effective. The payment for Form 1099 described in paragraph 1(a), above, shall be provided directly to Plaintiff's Counsel at 1110 N. Florida Ave. # 300, Tampa, FL 33602, within 30 days after the following conditions have been satisfied:

a.  The revocation period has passed (see paragraph 14, below) without revocation being exercised by the Claimant; and

b.  The Court has entered an order dismissing Case No. 6:16-cv-01307-PGB-TBS without prejudice.

2.  **General Release by Claimant.** In consideration of the Settlement Amount described in Paragraph 1 of this Agreement, Claimant releases and discharges the Defendant from all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature, known or unknown, in law or equity. Without limiting the scope of this general release, Claimant understands that this general release applies to, but is not limited to:

a.  All claims involving the Defendant and its parent companies, subsidiaries, affiliates, and divisions, as well as each of their respective officers, directors, employees, shareholders, members, and agents, (collectively, the "Releasees").

b.  All claims contained in or covered by the original complaint or the Amended Complaint.

2

c.   All claims arising out of Claimant's business relationship with the Defendant and the termination of that business relationship.

d.   All claims arising from any alleged violation by the Releasees of any federal, state, or local statutes, or ordinances, including, but not limited to:

    i.   the FLSA;

    ii.   the Age Discrimination in Employment Act (the "ADEA");

    iii.   the Older Workers Benefit Protection Act (the "OWBPA");

    iv.   the Americans with Disabilities Act;

    v.   Title VII of the Civil Rights Act of 1964, as amended;

    vi.   42 U.S.C. § 1981, as amended;

    vii.   the Equal Pay Act;

    viii.   the Employee Retirement Income Security Act;

    ix.   the Consolidated Omnibus Budget Reconciliation Act;

    x.   the Rehabilitation Act of 1973;

    xi.   the Civil Rights Act of 1991;

    xii.   the Family and Medical Leave Act (the "FMLA");

    xiii.   Florida minimum wage and overtime laws;

    xiv.   Florida civil rights laws; and

    xv.   any other employment discrimination laws.

    xvi.   All claims based on constitutional, statutory, common law, or regulatory grounds, and any and all claims based on theories of workers' compensation retaliation, breach of contract or implied covenant, deprivation of equity interest, shareholder rights, conversion, defamation, retaliation, wrongful or constructive discharge, fraud, misrepresentation, promissory estoppel, or intentional and/or negligent infliction of emotional distress.

    xvii.   All claims for any relief, no matter how denominated, including, but not limited to, back pay, front pay, vacation

3

pay, holiday pay, bonuses, compensatory damages, punitive damages, damages for pain and suffering and attorney fees.

Claimant does not waive any claims based on events arising after the execution of this Agreement. This general release applies only to those claims that Claimant now has, owns, or holds, or which Claimant had, owned, or held, or claimed to own at any time before execution of this Agreement, against any or all of the Releasees. While this general release does not prohibit Claimant from filing charges of discrimination against the Releasees with any governmental agency, Claimant expressly waives his right to personally recover any money from the Releasees as a result of any discrimination filings.

3.    **Disclaimer of Liability.** Nothing in this Agreement shall constitute or should be construed as an admission of liability or wrongdoing by Defendant. Defendant expressly denies that it has done nothing wrong or unlawful. Defendant expressly asserts that Claimant was an independent contractor and not an employee.

4.    **Confidentiality.** Claimant (on behalf of himself and his immediate family) will keep confidential and will not disclose any of the terms or conditions of this Agreement, or the negotiations which resulted in this Agreement, except to legal counsel, accountants, and tax authorities, and as otherwise may be required by law or legal process or for the limited purpose of enforcement of this Agreement. Claimant further acknowledges that confidentiality is of the essence of this Agreement. If Claimant is asked about the facts or circumstances surrounding the Lawsuit, he is to respond that the case has been resolved, and that he is bound by confidentiality obligations not to speak about the specifics of this litigation. In the event that Claimant is subjected to formal legal process, court order, or lawful subpoena regarding the Lawsuit, his compliance will not be deemed a breach of this Section.

5.    **Remedies for Breach.** The Parties agree that significant harm will be caused if Claimant violates the Confidentiality provision of this Agreement, but that such damages will be difficult to specifically quantify. Consequently, liquidated damages in the amount of $1,000 per breach will be awarded to Defendant for any breach by Claimant of the Confidentiality Provision of this Agreement. Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the Settlement Amount to be paid by Defendant under this Agreement, the prevailing Party will be entitled to recover from the other its reasonable attorney fees incurred in the action, along with costs and damages.

6.    **Integration.** This written Agreement contains the entire agreement of the Parties regarding the settlement of Claimant's Claims as set forth in the Amended Complaint. This Agreement may not be changed orally but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. Claimant acknowledges he

4

has not relied upon any representations or promises except as set forth in this Agreement and has not relied upon Defendant or Defendant's counsel for any advice on or interpretation of the legal or tax implications of this Agreement. By signing below, the Parties acknowledge receipt of a copy of this Agreement. Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to review the Agreement and to advise each Party concerning how all of the terms and conditions of this Agreement may affect their future tax liabilities. The Parties have had the opportunity to retain their own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement. Further, the Parties' signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice. All Parties acknowledge their attorneys provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

7. **Severability.** Should any clause of this Agreement be found void by a court of law, with the exception of the requirement that Defendant pay Claimant and his counsel the Settlement Amount set forth in Paragraph 1, that fact will not impair the remainder of this Agreement.

8. **Governing Law.** This Agreement must be interpreted and enforced in accordance with the laws of the State of Florida. The Parties submit to jurisdiction before any state or federal court of record in Orlando, Florida, subject to the right, if any, of either Party to attempt to remove any claim arising under this Agreement to a United States District Court if that court has jurisdiction.

9. **Construction of Agreement.** This Agreement is the result of negotiation and compromise. In interpreting this Agreement neither Party should be considered to be the drafter of the document and the language should not be strictly construed against either Party. Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

10. **Binding Effect.** This Agreement is binding upon and inures to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, successors, and assigns.

11. **Expenses.** The Parties must pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the Settlement Amount by Defendant to Claimant and his counsel referenced in Paragraph 1.

12. **Counterparts.** This Agreement may be executed in identical counterparts, each of which will constitute an original of this Agreement. Signatures

of the Parties may be exchanged by facsimile or electronically (e.g. PDF) and same will be treated as an original.

     **13.**   **Understanding and Voluntariness.** CLAIMANT REPRESENTS AND AGREES THAT HE HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH HIS COUNSEL, HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

     **14.**   **Time for Consideration and Revocation.** Claimant has had at least twenty-one days to consider this Agreement. Upon executing this Agreement, Claimant will have seven days following his execution of this Agreement in which he may revoke this Agreement. This Agreement will not be effective and enforceable until this revocation period has expired. Notice of the revocation of this Agreement must be in writing and delivered to Christopher Eckhart, Scopelitis, Garvin, Light, Hanson & Feary, 10 West Market Street, Suite 1400, Indianapolis, Indiana 46204 no later than 10:00 a.m. on the next business day following the expiration of the seven-day period.

**[SIGNATURES ON NEXT PAGE]**

**CONTRACTORS**

DocuSigned by:

*Pedro Zayas*

AEF37BBB8291AA5...

Pedro Zayas

Dated: 1/17/2017

**DEFENDANT**

Joseph Cory Holdings, LLC

By:

Odeh Ahmad - Managing Partner

Printed Name and Title

Dated: 3/2/17

4828-2703-6479, v. 7

7