UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**OBED VAZQUEZ, on behalf of himself
and on behalf of all others
similarly situated,**

    Plaintiff,

v.

                            Case No.:  6:16-cv-1307-ORL-40-TBS

**JOSEPH CORY HOLDINGS LLC,**

    Defendant.
_____/

**AMENDED JOINT MOTION TO APPROVE FLSA SETTLEMENTS
AND FOR DISMISSAL OF ALL CLAIMS WITH PREJUDICE**

Named Plaintiff, OBED VAZQUEZ, Opt-in Plaintiffs PEDRO ZAYAS, PABLITO SANTIAGO, EDWIN SANTIAGO, and FERNANDO COPLIN ("Plaintiff" and "Opt-In Plaintiffs," collectively "Plaintiffs"), and Defendant, JOSEPH CORY HOLDINGS LLC ("Defendant") (collectively, the "Parties"), by their respective counsel, and pursuant to this Court's March 30, 2017, Order, move for approval of the new Settlement Agreements executed by the Parties, and for dismissal with prejudice of all claims in this case. In support of their Amended Motion, the Parties state as follows:

1. Named Plaintiff OBED VAZQUEZ filled the instant lawsuit on July 14, 2016 (Doc. No. 1).

2. On September 30, 2016, Plaintiff filed an Amended Complaint (Doc. No. 28), alleging that Defendant misclassified Plaintiff as an independent contractor and that, as a result of the misclassification, Defendant failed to pay Plaintiff overtime wages for all hours he worked in excess of forty in a work week.

3. The Amended Complaint includes four Counts: Count I – FLSA Overtime Violations, Count II – Violations of the Florida Deceptive and Unfair Trade Practices Act

("FDUTPA"), Count III – Unpaid Wages under Florida Common Law, and Count IV – Violation of 26 U.S.C. § 7434(a), which provides a civil remedy for the filing of false information returns with the IRS.

4. During the litigation, Plaintiffs PEDRO ZAYAS, PABLITO SANTIAGO, EDWIN SANTIAGO, and FERNANDO COPLIN retained the undersigned counsel and filed a Notice of Opt-in on April 20, 2017. Thus there are a total of five Plaintiffs.

5. Defendant asserts that Plaintiffs were not misclassified nor are they owed overtime compensation. Specifically, Defendant contends that Plaintiffs at all times were independent contractors rather than employees. In addition, Defendant maintains that even if Plaintiffs were employees, they are exempt from the FLSA's overtime requirements under the Motor Carrier Exemption.

6. On October 17, 2016, Defendant filed a Motion to Dismiss Plaintiffs' FDUTPA and § 7434 claims.

7. In an Order dated March 2, 2017 (Doc. No. 54), the Court, granting Defendant's Motion to Dismiss in part, dismissed without prejudice Plaintiffs' § 7434 claims and declined to exercise supplemental jurisdiction on Plaintiffs' FDUTPA claim, thereby dismissing same without prejudice with leave for Plaintiff to file their FDUTPA claim in state court.

8. During Defendant's negotiations with Plaintiffs over Plaintiffs' remaining FLSA claims, Defendant's counsel raised a number of significant issues with Plaintiffs' counsel that could have prohibited Plaintiffs from recovering any money whatsoever.

9. Defendant provided the following compelling defenses that created issues with the FLSA claims made by each Plaintiff:

- Defendant never contracted with Plaintiffs. Rather, Defendant contracted with separate business entities and Plaintiffs chose to work for these entities;

- the few number of overtime hours allegedly worked by Plaintiffs;

- the "Motor Carrier Exemption" (29 U.S.C. § 213(b)(1)) ("MCE") to the FLSA, which would render Plaintiffs ineligible for overtime;

- the "good-faith" affirmative defense. This was especially important here because of Defendant's position on Plaintiffs' classification as independent contractors rather than employees; and, finally,

- the fact that many of the Plaintiffs had actually "employed" others to do their work, further undermining Plaintiffs' contention that they were employees rather than independent contractors.

10. These defenses became central to the negotiations. If Defendant prevailed on its employment status defense, Plaintiffs would recover nothing. Even if Plaintiffs were successful in arguing employment status, Defendant's MCE defense would have barred Plaintiffs claims entirely. Further, if Defendant established its "good faith" defense, liquidated damages would not be available even if Plaintiffs prevailed. Last, even if Plaintiffs were entirely successfully, they potentially stand to gain limited sums in damages because they worked few overtime hours.

11. To avoid the risks and unknowns, as well as the costs of protracted litigation, the Parties desire to fully and finally resolve this action with prejudice, as to all counts, claims, and parties. After a full review of the facts and information, the Parties, who have been represented by experienced counsel at all times, agree that the negotiated terms of the settlement represent a fair, reasonable, and just compromise of disputed issues.

12. The complete breakdown of recovery for each Plaintiff is as follows:

- Named Plaintiff OBED VAZQUEZ recovered a total of $8,000;

- PEDRO ZAYAS recovered a total of $1,750;

- PABLITO SANTIAGO recovered a total of $1,750;

3

- EDWIN SANTIAGO recovered a total of $1,750;

- FERNANDO COPLIN recovered a total of $1,750.

13. In exchange for these payments, Plaintiffs agreed to drop and release **just** their wage claims.

14. Based on Plaintiffs' counsel's computations, which include payments made by Plaintiffs to *other* individuals to help them complete their work, at most Plaintiffs would have been owed the following unliquidated amounts:

| | Company | Avg. Gross Pay to Plf's Company | Total Hours | Regular Rate of Pay | Avg. OT Hours | OT Rate (Half Time) | # of weeks of employment in statutory period | Unpaid OT |
|---|---|---|---|---|---|---|---|---|
| OBED VAZQUEZ | Obed Transport | $2,000.00 | 65 | $30.77 | 25 | $15.38 | 44 | $16,918.00 |
| PABLITO SANTIAGO | JJ Transport (2 people) | $2,000.00 | 50 | $20.00 | 10 | $10.00 | 86 | $8,600.00 |
| EDWIN SANTIAGO | A&D Transportation (3 people) | $1,532.00 | 60 | $8.51 | 20 | $4.26 | 37 | $3,149.11 |
| FERNANDO COPLIN | Samana Trucking (3 people) | $1,519.00 | 60 | $8.44 | 20 | $4.22 | 17 | $1,434.61 |
| PEDRO ZAYAS | Black Night Services (3 people) | $1,496.50 | 60 | $8.31 | 20 | $4.16 | 24 | $1,995.33 |

15. Defendant contests these amounts and asserts that even if Plaintiffs could be reclassified as employees and even if the MCE did not apply, Plaintiffs actually worked far fewer overtime hours, if any, based on the number of stops Plaintiffs made each day and the average length of time for each stop.

16. By way of further background in terms of the Parties' attempt to get this case dismissed, initially the Parties filed a Joint Stipulation (*see* Doc. 56) seeking to dismiss the case with prejudice. Finding the stipulation to be inappropriate in an FLSA case, the Court ordered the stipulation stricken and directed the parties to tender a copy of their settlement agreement for Court review and file a properly supported joint motion to approve their settlement agreement (Doc. 57).

17. Per the Court's instructions, the Parties filed a Joint Motion seeking Court approval under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982) on April

20, 2017. (Doc. 60). Under *Lynn's*, the Court must review the FLSA settlement to determine if it is a "fair and reasonable resolution of a bona fide dispute." There is no requirement that the Court do the same as to Plaintiffs' additional claim against Defendant.

18. On May 19, 2017, the Magistrate Judge entered a Report and Recommendation ("R & R") recommending the Court reject the Parties' Joint Motion to Approve FLSA Settlements. (Doc. 61).

19. The Parties have worked hard to correct the issues contained in the original Joint Motion for Approval and herein have upon attempted to clarify the issues, and made the necessary amendments of the agreements in an effort to respectfully satisfy the Court's concerns.

20. Specifically, the R & R first took issue with the fact that "it is not evident to me that these agreements serve to compromise the FLSA claims. They each include a recital that Plaintiffs are 'independent contractors,' a statement that is in direct contradiction to the allegations of Plaintiff's pleading and the basis of the FLSA claims." This recital has been removed from the new agreements.

21. The new agreements also dispensed with what the R & R referred to as "the exceptionally broad language here, which purports to also release non-parties, is the opposite of narrowly tailored and cannot be approved under even the most lenient of standards." The only claims release are the claims made *in this case*. ("Claimant releases and discharges the Defendant from all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred related to Claimant's Claims."))

22. Further, the parties also omitted the provisions regarding confidentiality and the imposition of liquidated damages for breach, both of which were problematic.

5

23. Perhaps most importantly, in the new agreements, rather than Plaintiffs acknowledging and/or agreeing to Defendant's assertion as to their status as "independent contractors," in direct contradiction with their claims of being employees, the language in the new agreement now only states that "Defendant *believes* the Claimant was properly classified as an independent contractor," (*see* Vazquez Amended Agreement, p. 1, ¶ C) (emphasis added), or "Defendant asserts" Plaintiffs were independent contractors (*see* Vazquez Amended Agreement, p. 2, ¶ 2). This is very different from the original versions which opened with "Obed Vazquez *was* an independent contractor…." ) (Original Vazquez Agreement, p. 1, ¶ A) (emphasis added).

24. Obviously Defendant "believed" -- and still believes -- Plaintiffs were independent contractors, while Plaintiffs "believe" and still believe they were employees. That's why the lawsuit was filed. And while the two sides may not agree on who is right or wrong, a settlement was nonetheless reached.

25. The R & R also took issue with the fact that payment was made by a Form 1099, something Defendant was unwilling to compromise in the revised settlement agreements. But, the manner in which a party receives a settlement payment is not a factor in a court's analysis when deciding whether to approve an FLSA settlement agreement. *See Lynn's Food Stores*, 679 F. 2d at 1353.

26. The R & R also took issue with the lack of a provision for liquidated damages and no explanation as to why they are not included. But as explained herein by the Parties, Defendant's "good-faith" defense became central to the negotiations in this case because, even if Plaintiff were to prevail, liquidated damages would not be available if Defendant established its good-faith defense.

27. Based on the information provided by Defendant, conversations between counsel explaining how Defendant paid Plaintiff, and the undersigned's analysis, Plaintiffs' counsel

determined that it would be difficult to recover liquidated damages in this case. Thus, at least from Plaintiffs' perspective, it was the undersigned's goal to recover as much of the "hard" damages as possible with the understanding that it was not likely any liquidated damages would be available, or recovered. In this settlement, Plaintiffs recovered a total of nearly $15,000. Plaintiffs' estimate they are owed somewhere in the neighborhood of less than $33,000, and Defendants estimate that Plaintiffs are owed nothing. In light of these differences, this settlement was both reasonable and fair under the facts of this particular case. Here, Plaintiffs have not waived their FLSA claims, they have merely compromised them in exchange for the consideration offered to each by Defendant.

28.  Additionally, the parties have agreed Defendant will pay Plaintiffs' counsel $15,000 in fees and costs (which includes the filing fee). Plaintiffs' counsel's fees and costs were discussed entirely separately from Plaintiffs' recovery, and the undersigned has expended significant time and effort trying to obtain this Court's approval of the new agreements, including re-writing each of the five agreements, re-obtaining all client signatures, and re-drafting this Motion several times until all Parties were ready to re-submit it to the Court.

29.  For these reasons, the Parties respectfully ask this Honorable Court to grant this Motion, approve the attached new settlement agreements, and dismiss this case with prejudice.

**MEMORANDUM OF LAW**

There are two ways in which claims under the FLSA can be settled and released by employees. First, § 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores,* 679 F.2d at 1353. Second, in the context of a private lawsuit brought by an employee against an employer under § 216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present

the district court with a proposed settlement and the district court enters a stipulated judgment approving the fairness of the settlement. *Id.*; *see also Sculte, Inc. v. Gandi,* 328 U.S. 108 (1946); *Jarrad v. Southeastern Shipbuilding Corp.,* 163 F.2d 960, 961 (5th Cir. 1947). The Eleventh Circuit has stated that the circumstances justifying court approval of an FLSA settlement in a litigation context are as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores,* 679 F.2d at 1354.

The Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354. In determining whether the settlement is fair and reasonable, the Court may consider the following factors:

(1) the existence of fraud or collusion behind the settlement;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceeding and the amount of discovery completed;
(4) the probability of plaintiff's success on the merits;
(5) the range of possible recovery; and
(6) the opinions of the counsel.

*See Leverso v. South Trust Bank of Ala. Nat. Assoc.,* 18 F.3d 1527, 1530-31 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.,* No. 6:05-cv-592-Orl-22JGG, 2007 U.S. Dist. LEXIS 10287 at *2-3, (M.D. Fla. Jan. 8, 2007). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton*, 2007 U.S. Dist. LEXIS at *2-3.

**I.     THE SETTLEMENT.**

The new Settlement Agreements are attached as Exhibit A. Under the terms of the Settlement Agreements, Defendant will pay Named Plaintiff OBED VAZQUEZ the sum total of $8,000 in settlement of his claims. The settlement sum is approximately half of the total recovery Plaintiff would have sought at trial. In addition, Defendant will pay Opt-in Plaintiffs PEDRO ZAYAS, PABLITO SANTIAGO, EDWIN SANTIAGO, and FERNANDO COPLIN, $1,750 each. These amounts fairly balance the monetary amounts at issue in the case with the risks inherent in proceeding with litigation rather than settling.

The settlement also provides that Defendant will pay Plaintiffs' counsel the sum total of $15,000 in fees and costs ($3,000 for each Plaintiff). Plaintiffs' fees and costs were negotiated separately from the amount payable to Plaintiffs under this settlement, and the Parties stipulate this sum is "reasonable" in light of the stage of the proceedings and the work performed to date by Plaintiffs' counsel.

## II.    ALL OF THE RELEVANT CRITERIA SUPPORT THE FAIRNESS OF THE SETTLEMENT.

As discussed above, Defendant denies that it owes Plaintiffs any additional compensation, and Plaintiffs acknowledge that the settlement amounts represent fair compensation for their FLSA claims. Accordingly, the settlement is fair.

The settlement involves no fraud or collusion. The proposed settlement arises from an action brought by Plaintiffs against their alleged former employer, which was adversarial in nature. Courts have found that no fraud or collusion exists when both parties were represented by counsel and the amount paid to the plaintiff seemed fair. *See Helms v. Central Fla. Reg. Hosp.*, No. 6:05-cv-383-Orl-22JGG, 2006 U.S. Dist. LEXIS 92994 at *11-12 (M.D. Fla. December 21, 2006). Here, each Party was independently represented by experienced counsel. The undersigned counsel represent to the Court that there was no fraud or collusion and that all parties are in agreement.

The probability of success on the merits, and the complexity, expense, and length of future litigation also militate in favor of this settlement. This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs. The Parties agree that they have been able to properly evaluate the claims and that Plaintiffs have at all times been represented by counsel. In agreeing to the proposed settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis of the claims.

Counsel for Plaintiffs and for Defendant believe the settlement to be fair and reasonable, as Plaintiffs will be fairly compensated, and their attorneys paid.

### III.     FEES WERE NEGOTIATED SEPARATELY AND ARE REASONABLE.

As part of the Parties' settlement, Plaintiffs' attorneys' fees and costs were negotiated separately from the amounts claimed by Plaintiffs for their underlying claims and are not a function of any percentage of recovery. As the Court explained in *Bonetti v. Embarq Management Co.*, 2009 U.S. Dist. LEXIS 68075 at *11-12 (M.D. Fla. Aug. 4, 2009), where a "plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *Bonetti*, 2009 U.S. Dist. LEXIS 68075 at *15-16.

Here, Defendant's payment of $15,000 for Plaintiffs' attorneys' fees and costs provides for the resolution of all attorneys' fees and costs owed to Plaintiffs' counsel. The payment to Plaintiffs' Counsel for attorneys' fees and costs constitutes a fair and reasonable compromise, and includes no request for fees going forward following the filing of the original joint motion for approval (or even the original stipulation).

## **CONCLUSION**

The Parties assert that the settlement they reached is a fair and reasonable compromise of Plaintiffs' claims. Accordingly, the Parties respectfully request that this Court approve the new Settlement Agreements and dismiss all claims asserted by Plaintiffs in this action with prejudice, retaining jurisdiction to enforce the Settlement Agreements as necessary.

Dated this 3rd day of August, 2017.

| | |
|---|---|
| Scopelitis, Garvin, Light, Hanson & Feary, P.C.<br>10 West Market Street, Suite 1400<br>Indianapolis, IN 46204<br>Telephone: (317) 637-1777<br>Facsimile: (317) 687-2414 | WENZEL FENTON CABASSA, P.A.<br>1110 North Florida Avenue, Suite 300<br>Tampa, Florida 33602<br>Telephone: 813-224-0431<br>Facsimile: 813-229-8712 |
| BY: */s/ Christopher J. Eckhart*<br>    Christopher J. Eckhart, Esquire<br>    Indiana Bar Number: 27823-49<br>    E-mail: ceckhart@scopelitis.com<br>    Counsel for Defendant | BY: */s/Luis A. Cabassa*<br>    Luis A. Cabassa<br>    Florida Bar Number: 0053643<br>    E-mail: lcabassa@wfclaw.com<br>    Counsel for Plaintiffs |